**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KAREN GORECKI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLEARVIEW ELECTRIC, INC. d/b/a CLEARVIEW ENERGY, INC.,<br><br>Defendant. | Civil Action No. _____<br><br>**Class Action Complaint**<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, Karen Gorecki ("Gorecki" or "Plaintiff"), individually and on behalf of all others similarly situated, alleges as and for her Class Action Complaint against Defendant, Clearview Electric, Inc. d/b/a Clearview Energy, Inc. ("Clearview" or "Defendant"), upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon, *inter alia,* the investigation made by her attorneys, as follows:

**NATURE OF THE ACTION**

1. This action seeks to redress the deceptive pricing practices of Defendant that have caused thousands of Pennsylvania consumers to pay considerably more for their electricity than they should otherwise have paid.

2. Defendant has taken advantage of the deregulation of the retail electricity market in Pennsylvania by luring consumers into switching energy suppliers with false promises that it offers variable rates for electricity that are based on wholesale market conditions. Defendant lures consumers into switching by offering a teaser rate that is lower than local utilities' rates for

electricity supply.  When the teaser rate expires after a couple of months, Defendant switches customers to a variable rate, which it represents is based on wholesale market conditions.

3. Defendant's representations are deceptive.  In fact, Clearview's variable rates are substantially higher than those otherwise available in the energy market, and are not reflective of the wholesale market conditions on which Clearview purports to base its variable rates.  Clearview's business model is simple: after the teaser rate expires, it charges exorbitant rates that are not based on wholesale market conditions, namely the rates that other retailers and energy customers' incumbent utility providers charge for electricity and wholesale costs.  As a result, Pennsylvania consumers are being fleeced millions of dollars in exorbitant charges for energy.

4. This suit is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PS § 201 *et seq.* and the common law of Pennsylvania on behalf of a class of consumers who purchased electricity from Clearview from October, 2012 to the present.  It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, attorneys' fees and the costs of this suit.

## PARTIES

5. Plaintiff Karen Gorecki is a natural person and citizen of Pennsylvania.  Plaintiff Gorecki was a customer of Clearview Energy from approximately October 2012 through October 2017, and as a result of Defendant's deceptive conduct, she incurred excessive charges for electricity.

6. Defendant Clearview is a corporation with its principal office located at 901 Main Street, Suite 4700, Dallas, Texas 75202.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of states different from Defendant.

8. Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391.  Defendant regularly transacts and solicits business in this District, and Plaintiff resides in this district.

## SUBSTANTIVE ALLEGATIONS

9. In 1996, Pennsylvania deregulated the market for retail energy supply, a major break with past policy.  Prior to deregulation, gas and electricity were supplied and distributed solely by local utility companies.  Over the last several years, a number of states, including Pennsylvania, have begun to change the regulations in the energy industry purportedly to enhance competition between energy providers.  The notion is that competition would result in energy service companies ("ESCO's") being more aggressive than the utility in reducing wholesale purchasing costs and thereby lower retail residential rates.

10. As part of the deregulation plan, ESCO's (like Clearview) do not have to file the natural gas and electricity rates it charges with the Pennsylvania Utility Commission ("PUC") or the method by which it set its rates.

11. If a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO but still "delivered" by their existing utility.  The customer's existing utility continues to bill the customer for both the energy supply and delivery costs.  The only difference to the customer is which company sets the price for the customer's energy supply.

12. After a customer switches to an ESCO, the customer's energy supply charge – based on a customer's kilowatt hour usage – is calculated using the supply rate charged by the ESCO and not the regulated rate charged by customer's former utility. The supply rate charged is itemized on the customer's bill as the number of kilowatt hours ("kWh") multiplied by the rate. For example, if a customer uses 300 kWh at a rate of 11.0¢ per kWh, the customer will be billed $33.00 (300 x $.11) for his or her energy supply.

13. Clearview takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge Pennsylvania consumers exorbitant rates for electricity. In theory, energy deregulation allows consumers to shop around for the best energy rates, and it allows consumers to take advantage of market-based rates that decline when wholesale costs decline. However, Clearview exploits deregulated markets with false promises that it offers variable rates based on wholesale market conditions in order to deceive consumers into purchasing energy from it. In fact, Clearview's rates are substantially higher than other ESCOs or local utilities and they are not reflective of changes in wholesale rates.

14. Clearview lures consumers to switch from their local utility companies or other energy suppliers, promising that it will offer a variable rate for electricity that is based on wholesale market conditions. However, in reality, after switching to Clearview as a supplier, consumers' energy bills increased dramatically.

### Clearview Charges Improperly High Electricity Rates

15. Clearview engages in a classic bait and switch deception scheme. Clearview lures consumers into switching to its electricity supply service by offering teaser rates that are much lower than its regular rates.

16. In or around October, 2012, a Clearview representative solicited Plaintiff to switch from her utility company, Duquesne Light Company ("Duquesne Light"), to Clearview with promises that she would save money if she switched to Clearview.

17. In or around October, 2012, Plaintiff made the switch to Clearview for electricity, and her and Clearview's contractual agreement is memorialized in Defendant's standard Sales Agreement and Terms of Service (attached as Exhibit "A"), which was confirmed verbally with Plaintiff in audio. Thereafter, Plaintiff paid the rate she was charged.

18. Plaintiff was initially placed on an introductory fixed rate plan for electricity.

19. After the fixed rate expired, the contract, which was provided to Plaintiff by Clearview, identified the new rate was a variable month-to-month rate for electricity which was "based on wholesale market conditions."

20. Any reasonable consumer would understand that based on these representations that Clearview's rates would be based on wholesale market conditions and would expect that the rates would be commensurate with the rates offered by the local utility and other ESCOs. Plaintiff reasonably expected that Clearview's variable rates for electricity would be based on wholesale market conditions, *i.e.* reflective of the price of electricity on the market and the rates offered by Plaintiff's former utility and other competitors in the market.

21. A reasonable consumer would also understand and expect that a variable rate based on wholesale market conditions would be reflective of changes in the wholesale market price for electricity. After all, that is the point of deregulation, to allow consumers to take advantage of the efficiencies of the market and to enjoy lower retail prices when the wholesale market drops.

22.     But the rates Clearview charged Plaintiff were not commensurate with rates otherwise available in the market or with changes in wholesale rates.

23.     Plaintiff paid Clearview's variable rate until approximately October 2017. Plaintiff cancelled her service with Clearview at that time. The following table is a representative sampling which identifies the billing periods during this time, the variable rates Clearview charged Plaintiff, and the corresponding rates Duquesne Light would have charged for electricity (which is a reasonable representation of the available market rates):

| **Billing Period End Date[1]** | **Clearview Rate** | **Duquesne Light Rate** |
|---|---|---|
| 9/11/2016 | .1299/kwh | .0807/kwh |
| 10/11/2016 | .1299/kwh | .0807/kwh |
| 11/12/2016 | .1299/kwh | .0807/kwh |
| 12/12/2016 | .1299/kwh | .0783/kwh |
| 1/14/2017 | .1299/kwh | .0783/kwh |
| 3/13/2017 | .1299/kwh | .0783/kwh |
| 4/11/2017 | .1299/kwh | .0783/kwh |
| 5/13/2017 | .1299/kwh | .0783/kwh |
| 6/12/2017 | .1299/kwh | .0779/kwh |
| 7/12/2017 | .1299/kwh | .0779/kwh |
| 8/13/2017 | .1299/kwh | .0779/kwh |

---

[1] The first day of the period is approximately thirty days before.

24.     Specifically, in the electricity market, the rates Pennsylvania utilities like Duquesne Light charge is an accurate reflection of rates that are based on wholesale market conditions.  In fact, Duquesne Light purchases electricity for its customers via a competitive procurement process from the same wholesale electricity market as other electricity retailers, including Clearview, can purchase electricity for its customers.

25.     For utility customers in Pennsylvania who do not get their electricity supply from an ESCO, the utilities buy electricity from the Pennsylvania wholesale electricity markets.  The Federal Energy Regulatory Commission (FERC) regulates the wholesale electricity market, which is administered by the PJM Interconnection.  Utilities (and ESCOs) purchase electricity at the wholesale level for resale to their customers.  Thus, the purchases made by the utilities from the wholesale market reflect actual market costs and conditions.

26.     That Clearview's rate was substantially higher than the local utility's rate therefore demonstrates that Clearview's rate is not in fact based on wholesale market conditions. At multiple points, Clearview charged Plaintiff a rate that was substantially higher than the rate charged by Duquesne Light.  Indeed, as evidenced by the above chart, there were multiple months where Plaintiff's electricity rate with Clearview was ***65% higher*** than the rate charged by Duquesne Light during that same billing period.  If Clearview's rate was based on wholesale market conditions (as any reasonable consumer would expect of a variable rate based on wholesale market conditions), then its rate would have also declined during this period (because Duquesne Light's rate is reflective of changes in the wholesale market cost of electricity).

27.     A reasonable consumer would understand that the price the local utility or other ESCO charges is part of wholesale market conditions and that a price based on wholesale market conditions would be consistent with the price charged by the local utility or other ESCO.

7

However, Clearview's prices are substantially higher than local utilities' rates, as well as the rates other ESCOs charge.

28. Thus, Clearview's statements with respect to the electricity rates it will charge are materially misleading because consumers do not receive a price based on wholesale market conditions. Instead, consumers are charged rates that are substantially higher. Clearview fails to disclose this material fact to its customers.

29. Defendant, Clearview's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier's price. No reasonable consumer who knows the truth about Clearview's exorbitant rates would choose Clearview as an electricity supplier.

30. In fact, all that Clearview offers customers is electricity delivered by local utilities, commodities that have the exact same qualities as electricity supplied by other ESCOs or local utilities. There is nothing to differentiate Clearview from other ESCOs or local utilities, and the potential for a price based on wholesale market conditions is the only reason any reasonable consumer would enter into a contract for electricity with Clearview.

31. Clearview knows full well that it charges a rate that is unconscionably high, and the misrepresentations it makes with regard to the rate being based on wholesale market conditions were made for the sole purpose of inducing customers to sign up for Clearview's electricity supply so that it can reap outrageous profits to the direct detriment of Pennsylvania consumers without regard to the consequences high utility bills cause such consumers. As such, Clearview's actions were actuated by actual malice or accompanied by wanton and willful disregard for consumers' well-being.

32. Clearview's misstatements and omissions caused injury to Plaintiff because she believed that her rate would be based on wholesale market conditions when switching from Duquesne Light to Clearview's electricity plan. Plaintiff would not have enrolled in Clearview's plan but for its false misrepresentations.

33. Had Clearview charged Plaintiff a rate that was actually based on wholesale market conditions, Plaintiff would have been charged a substantially lower rate and she was injured accordingly when she paid her bills.

34. Defendant's violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. ("UTPCPL") *et seq.* and the common law are applicable to all members of the Class, and Plaintiffs are entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

## CLASS ALLEGATIONS

35. Plaintiff brings this action pursuant to Pennsylvania law on behalf of herself and all other similarly situated Clearview customers in the Commonwealth of Pennsylvania who were charged a variable rate for electricity from 2012 to the present.

36. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or complaint.

37. Excluded from the Class are Defendant; any parent, subsidiary or affiliate of Defendant; any entity in which any Defendant has or had a controlling interest or which Defendant otherwise control or controlled; and any officer, director, legal representative, predecessor, successor or assignee of a Defendant.

38. This action is properly maintainable as a class action. As provided in Pennsylvania law, the proposed Class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. There are questions of law or fact common to all Class Members that predominated over any questions affecting only individual members. Specifically, the common questions of fact and law include:

   i. Whether Defendant violated 73 PS § 201 *et seq.*;

   ii. Whether Defendant breached Clearview's contract with Pennsylvania consumers by charging variable rates not based on wholesale market conditions;

   iii. Whether Defendant breached the covenant of good faith and fair dealing by exercising unilateral price-setting discretion in bad faith, *i.e.*, to price gouge;

   iv. Whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

   v. Whether Defendant should be enjoined from continuing to charge variable rates not based on wholesale market conditions.

39. The proposed lead Plaintiff's claims, one or any of them, are typical of the proposed class because the proposed lead Plaintiff's claims are based upon the same facts and circumstances (practice or course of conduct) that gives rise to the claims of the other class members and based upon the same predominate legal theories.

40. The representative Plaintiff can adequately and fairly represent the class. No conflict of interest exists between the representative Plaintiff and the Class Members because Defendant's alleged conduct affected them similarly.

41.     The Plaintiff and her chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution.  In addition, the Plaintiff's attorneys are competent in the areas of law relevant to this Complaint and have sufficient experience and resources to vigorously represent the Class Members and prosecute this action.

42.     A class action is superior to any other available method for adjudicating this controversy.  The proposed class is (i) the surest way to fairly and expeditiously compensate so large a number of injured persons that constitute the Class, (ii) to keep the courts from being inundated by hundreds or thousands of repetitive cases, and (iii) to reduce transaction costs so that the injured class members can obtain the most compensation possible.  Accordingly, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious wasteful litigation relevant to this action.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PS § 201 *et seq.*)**

43.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

44.     73 PS § 201 *et seq.* declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…"

45.     Clearview knowingly and willfully misrepresented to Plaintiff and the Class that Clearview's rates are based on wholesale market conditions and reflective of wholesale electricity costs in the market when its rates are not, in fact, based on wholesale market conditions.

46.     Defendant knowingly and willfully failed to inform consumers of the material fact that Clearview's rates are substantially higher than those otherwise available in the market and intends that consumers rely upon the deception.

47.     Defendant's deception caused Plaintiff and the Class to pay substantially higher rates than those otherwise available in the market.

48.     Through the conduct described above, Clearview has engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

49.     By reason of the foregoing, Clearview has violated the UTPCPL and should be enjoined from continuing to fail to disclose that Clearview's rates are substantially higher than those otherwise available in the market and misrepresenting that its rates are based on wholesale market conditions.

50.     Defendant is also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees and costs.

## COUNT II
### (Breach of Contract)

51.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

52.     Plaintiff and the Class entered into a valid contract with Clearview for the provision of electricity.

53.     Pursuant to the Agreement, it is upon information and belief Clearview agreed to charge a variable rate for electricity purportedly based on wholesale market conditions.

54.     Pursuant to the Agreement, Plaintiff and the Class paid the variable rates charged by Clearview for electricity.

55. However, Clearview failed to perform its obligations under the Agreement because Clearview charged variable rates for electricity that were not based on wholesale market conditions.

56. Plaintiff and the Class were damaged as a result because they were billed, and they paid a charge for electricity that was substantially higher than they would have been had Clearview based its rates on wholesale market conditions.

57. By reason of the foregoing, Clearview is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## COUNT III
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

58. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

59. Every contract in Pennsylvania contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of contract's express terms.

60. Under the contract, Clearview has unilateral discretion to set the variable rates for electricity based on wholesale market conditions.

61. Plaintiff reasonably expected that the variable rates for electricity would reflect the market prices for electricity and that Defendant Clearview would refrain from price gouging. Without reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity from Defendant Clearview.

62. Defendant Clearview breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and

frustrate Plaintiff and other Class members' reasonable expectations that the variable rates for electricity would be based on wholesale market conditions.

63. Defendant acted in bad faith when Clearview made contractual promises to base its rates on wholesale market conditions knowing full well that its rates were substantially higher than rates that are actually based on wholesale market conditions, including rates charged by competitors and customers' incumbent utilities.

64. As a result of Defendant's breach, Defendant Clearview is liable to Plaintiff and other Class members for actual damages in an amount to be determined at trial and attorney's fees.

## COUNT IV
### (Unjust Enrichment)

65. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

66. By engaging in the conduct described above, Clearview has unjustly enriched itself and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the other members of the Class.

67. It would be unjust and inequitable for Defendant to retain the payments Plaintiff and the Class made for excessive electricity charges.

68. By reason of the foregoing, Clearview is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Issue an order certifying the Class defined above, appointing the Plaintiff as Class Representative and designating her attorneys as Class Counsel;

(b) Find that Clearview has committed the violations of law alleged herein;

(c) Enter an order granting monetary relief and damages on behalf of the Class;

(d) Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(e) Determine that Defendant breached the contract with the Class and enter an appropriate order awarding monetary and injunctive relief;

(f) Enter an order granting all appropriate relief on behalf of the Class under the applicable state laws;

(g) Render an award of compensatory damages, the amount of which is to be determined at trial;

(h) Render an award of punitive damages;

(i) Enter a judgment including interest, costs, reasonable attorneys' fees, costs and expenses; and

(j) Grant all such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.


Date: January 8, 2018                                             Respectfully submitted,

                                                                   s/ Charles E. Schaffer
                                                                  Charles E. Schaffer
                                                                  Daniel C. Levin
                                                                  LEVIN SEDRAN & BERMAN

510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: 215-592-1500
CSchaffer@lfsblaw.com
DLevin@lfsblaw.com

Jonathan Shub
Kevin Laukaitis
Kohn Swift & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Phone: 215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

***Attorneys for Plaintiff and the Putative Class***