# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KAREN GORECKI, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) 2:18-cv-00035 |
| v. | ) |
| | ) |
| CLEARVIEW ELECTRIC, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Karen Gorecki filed a putative class action against Clearview Electric, Inc. ("Clearview"), alleging that Clearview breached its service contract by not varying price based on wholesale market conditions, and charging Gorecki and the putative class substantially higher rates as a result. In the alternative, Gorecki alleges that Clearview unjustly enriched itself at her and the class's benefit by charging excessively for electricity. Clearview now moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, Clearview's Motion to Dismiss will be granted in part and denied in part.

## I. BACKGROUND

The Court takes the following facts, drawn from Plaintiff's Complaint, as true. In 1996, Pennsylvania deregulated its retail energy market. (Amended Class Action Complaint, ECF No. 21 ("ECF No. 21"), ¶ 12.) Before this move, local utility companies exclusively supplied and distributed gas and electricity. (*Id.*) More recently, Pennsylvania changed its energy regulations to encourage competition among energy providers. (*Id.*) One goal of this scheme is for electric generation suppliers ("EGSs") to lower energy costs. (*Id.*) EGSs purchase energy from companies that produce it and then sell that energy to consumers. (*Id.* ¶ 14.) They may buy

electricity in the wholesale market, own their own electricity facilities, or purchase electricity futures contracts in advance. (*Id.*) EGSs do not, however, deliver electricity. (*Id.*) Clearview is an EGS. (*Id.* ¶ 12.)

If a customer switches to an EGS, he will have his energy supplied by the EGS but delivered by his existing utility. (*Id.* ¶ 15.) That utility will continue to bill the customer for the energy supply and delivery costs. (*Id.*) The only difference the consumer will see is which company sets the price for the energy supply. (*Id.*) The energy supply charge (based on the customer's kilowatt hour usage) is calculated using the supply rate charged by the EGS. (*Id.* ¶ 16.) For example, if the customer uses 300 kWh of electricity at a rate of $.11 per kWh, the customer will be billed $33.00 for his energy supply. (*Id.*)

The Federal Energy Regulatory Commission ("FERC") regulates the wholesale electricity market, which, in Pennsylvania's case, is administered by the PJM Interconnection. (*Id.* ¶ 35.) Utilities and EGSs purchase electricity at the wholesale level and then resell it to their customers at a retail rate. (*Id.*)

Around October 2012, a Clearview representative solicited Plaintiff to change her utility service from Duquesne Light Company ("Duquesne Light") to Clearview, promising she would save money if she made the switch. (*Id.* ¶ 26.) Plaintiff switched to Clearview around that date. (*Id.* ¶ 27.) Plaintiff's plan worked as follows: she was placed on an introductory, fixed-rate plan for electricity for six months. (*Id.* ¶ 28.) At the end of the six months, the plan automatically renewed for an additional twelve months. (*Id.*) Around February 10, 2014, Clearview sent her a letter stating that it was "committed to providing [her] with continued value" and notifying her that her electricity plan would continue on a variable rate plan. (*Id.* ¶ 29.) The letter contained the "Sales Agreement and Terms of Service" applying to the variable rate plan. (Sales Agreement

2

and Terms of Service, Compl. Ex. A ("Sales Agreement").) The Sales Agreement reads like a contract, defining essential terms, setting forth billing and payment terms, providing the process by which parties may cancel the agreement, and, important for the Court's purposes here, including a price disclaimer. (*Id.*)

The Sales Agreement set forth that the new electricity rate was a variable, month-to-month rate "based on wholesale market conditions." (*Id.*) The Sales Agreement further states that "Clearview sets the generation supply rate that you pay" and the "[p]rice per kWh includes Electric Generation Supply, Transmission Charges, and Estimated State Taxes." (*Id.*) Plaintiff paid this rate from approximately May 2014 until approximately October 2017, when she canceled her service. (ECF No. 21, ¶ 33.) Between September 11, 2016, and August 13, 2017, Clearview's rate was .1299/kwh each and every month. (*Id.* ¶ 38.) During those same months, the wholesale market price[1] fluctuated; it was as low as .0484/kwh and as high as .0836/kwh. (*Id.*)

On these facts, Plaintiff avers that Clearview breached the terms of the agreement (Count I), and in the alternative, that Clearview unjustly enriched itself at the expense of Plaintiff and the other Class members (Count II). Plaintiff brings this action on behalf of herself and similarly situated Clearview customers in the Commonwealth of Pennsylvania. Clearview moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Federal courts must dismiss cases that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Complaints therefore must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211

---

[1] Plaintiff calculates the wholesale market price as a combination of weighted locational marginal pricing and other PJM Interconnection charges (such as capacity and ancillary services). (*Id.*, n.11.) Plaintiff avers that these charges are identified in Clearview's Sales Agreement as "Electronic Generation Supply." (*Id.*)

3

(3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When determining whether dismissal is appropriate, the Court must: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citation omitted). The Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## III. DISCUSSION

### A. Breach of Contract (Count I)

To establish a breach of contract under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of the duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. 1999). Pennsylvania law requires that an energy supplier's contract include a statement informing the customer "on what basis prices will vary." 52 Pa. Code § 54.5(c)(2)(i)-(ii). The parties concede the existence of a contract and that the essential terms include a statement that the rate will be calculated based on wholesale market conditions. (ECF No. 31, at 2; ECF No. 26, at 5.)

4

Plaintiff argues that Clearview breached the contract because it contains an express provision that her plan's "[r]ate is based on wholesale market conditions" and Clearview did not actually base its rates on those conditions. (ECF No. 21, ¶ 42.) Her argument relies on two core allegations. First, she avers that Clearview's rates "were not commensurate with rates otherwise available in the market," (*Id.* ¶ 32), because "the rates that Pennsylvania utilities such as Duquesne Light charge are an accurate reflection of rates that are based on wholesale market conditions," (*Id.* ¶ 34), and so the fact that Clearview's rate was "substantially higher" than Duquesne Light's indicates that Clearview was not varying its prices according to wholeale market conditions. (*Id.* ¶ 36.) Second, she alleges using data from the PJM Interconnection that "[a]s wholesale market price fluctuates, Clearview's variable rate does not correspond to these fluctuations. Instead, Clearview's variable rate remains significantly higher than the corresponding market price." (*Id.* ¶ 41 (emphasis omitted).)

Clearview argues that both of these core allegations are conclusory and contrary to precedent, and that Plaintiff's view of the wholesale electricity market is oversimplified to the point of falsity. (ECF No. 26, at 11–20.) Clearview directs the Court's attention to a recent Third Circuit opinion in *Orange v. Starion Energy PA, Inc.*, 711 F. App'x 681 (3d Cir. 2017). There, the Court considered allegations that the defendant ESG breached its contract term that its variable rate "may change in response to market conditions," when the plaintiff averred that the defendant was charging him nearly three times the rate charged by his local utility. *Id.* at 682–83. The Court concluded that the plaintiff's complaint was deficient because "a simple comparison of [defendant's] local utility rate to the local public utility rate is not sufficient to support the reasonable inference that [defendant] did not adhere to that formula." *Id.* at 684. According to Clearview, *Orange*'s logic controls this case, and Plaintiff's Complaint must be dismissed.

5

The factual allegation in Plaintiff's complaint is that "Clearview charged variable rates for electricity that were not based on wholesale market conditions." (ECF No. 21, ¶ 61.) Plaintiff has provided two comparison tables in support: one comparing Clearview's rates with Duquesne Light's rates over a twelve-month period from September 11, 2016 to August 13, 2017, (ECF No. 21, ¶ 33), and one comparing Clearview's rates with the wholesale market price over the same period, (ECF No. 21, ¶ 38). Plaintiff asserts that she calculated the wholesale market price based on "weighted locational marginal pricing (LMP) and other PJM charges (i.e., capacity, ancillary services, etc.)." (ECF No. 21, at 12 n.11.)

Clearview is correct that because Plaintiff alleges that Clearview's rate did not vary based on the *wholesale* rate, the Court need not consider variation from Duquesne Light's rate (another retail rate) in evaluating her averments. The Third Circuit has made that much clear in *Orange*, as have other United States District Courts considering variations on Plaintiff's argument. *See, e.g.*, *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 408 (E.D. Pa. 2016) (dismissing plaintiff's breach of contract claim where the contract provided that variable rates "may fluctuate each month based on wholesale market conditions" but plaintiff presented only comparisons to a local utility's retail rates); *Zahn v. N. Am. Power & Gas, LLC*, 2015 WL 2455125 (N.D. Ill. May 22, 2015) ("Zahn's allegation that NAPG's prices did not track Commonwealth Edison's price—something the contract explicitly states is not guaranteed—does not constitute an allegation that the rate NAPG charge did not vary based on [market prices and applicable taxes]."), *vacated on other grounds*, 847 F.3d 875 (8th Cir. 2017).

But that is not all Plaintiff avers. She has also set forth facts regarding wholesale market conditions to support her claim that Clearview did not base its price on them. Clearview argues that Plaintiff's connection between Clearview's prices and the wholesale market price from the

6

PJM market is "apples to bananas," (ECF No. 26, at 2), and that Plaintiff's definition for "Wholesale Market Price" in her comparison table is factually baseless, (*id.* at 16). According to Clearview, wholesale market *conditions* cannot be directly linked to a wholesale market *price*. Therefore, the price available on the wholesale market (which Plaintiff calculated in part using publicly available rates from the PJM Interconnection) is not an accurate reflection of "wholesale market conditions." That may be so, but the Sales Agreement provides no definition for "wholesale market conditions." Rather, the Sales Agreement states that its "[p]rice per kWh includes Electric Generation Supply, Transmission Charges, and Estimated State taxes." (ECF No. 21–2, at 3.) None of these terms is defined.

While the Sales Agreement expressly states that "Clearview sets the generation supply rate that you pay," (ECF No. 21–2, at 3), Clearview's discretion is not unlimited. The Sales Agreement also provides that the rate will be "based on wholesale market conditions."[2] Nor, unlike in *Orange*, did Clearview list factors besides "wholesale market conditions" or list other territories to which the rate fluctuation would be linked. *See Orange*, 711 F. App'x at 682 (listing the contract terms, including that "[t]he Variable Rate may change in response to market conditions in any or all of the PJM, NEISO, NYISO, and MISO territories, including such factors as electricity market pricing, applicable taxes, transmission costs, utility charges, and other market price related factors, as determined in Starion's discretion"). Indeed, Plaintiff's factual averments resemble those in other cases where a breach of contract claim survived a motion to dismiss. *See, e.g., Melville v. Spark Energy, Inc.*, No. 15-cv-8706, 2016 WL 6775636 (D.N.J. Nov. 15, 2016) ("The Complaint notes that the CDS stated Spark charges energy prices based on market conditions; alleges that Spark breached that provision by setting rates higher

---

[2] Clearview concedes that it does not have "unlimited discretion to charge whatever rate it wants." (ECF No. 32, at 5.)

7

than and unrelated to those of other energy suppliers; Plaintiffs performed their obligations under the contract; and Plaintiffs paid more for energy as a result of Spark's breach. The Complaint supports these contentions by attaching a copy of the CDS and listing rates billed by SPARK and another energy provider. Such evidence is enough to show a plausible breach of contract claim . . ."); *Basile v. Stream Energy Pa., LLC*, No. 15-cv-01518, 2016 WL 4611443 (M.D. Pa. Sept. 6, 2016) (denying defendant's motion for judgment on the pleadings when "Plaintiff plainly alleges that Defendants' rate changes 'bore no reasonable relationship to market conditions.'" (quoting complaint)).

Given that the Sales Agreement here does not define "wholesale market conditions,"[3] Clearview proffers "components of generation service [that] are included in the phrase." (ECF No. 26, at 7.) Clearview contends that "[s]pecific cost elements identified by the PaPUC for inclusion in generation service are wholesale energy, capacity, ancillary, applicable RTO administrative and transmission cost, congestion costs, supply management costs, other administrative costs, applicable taxes and costs for alternative energy portfolio standard compliance." (*Id.* at 7 (citing 52 Pa. Code § 69.1808).) The Court has reviewed the relevant Pennsylvania regulations, including § 69.1808, and found that the price-to-compare ("PTC"), the "line item that appears on a retail customer's monthly bill for default service" is "equal to the sum of all unbundled generation and transmission related charges to a default service customer for that month of service." 52 Pa. Code § 69.1803. The cost elements listed in § 69.1808 to be

---

[3] In her briefing, Plaintiff makes the argument that the Sales Agreement "limit[s] market conditions to 'your Local Distribution Utility ("LDU").'" (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 31 ("ECF No. 31"), at 13. The Sales Agreement does not define market conditions this way, and that language is part of the sentence "The PUC regulates the distribution rates of your Local Distribution Utility ("LDU")." ECF No 21–2, at 3. The Court declines to read this language as limiting the scope of the term "wholesale market conditions."

included in the price-to-compare are the ones that Clearview argues are included in "wholesale market conditions."

However, "default service" in § 16.1803 is defined as "electric generation supply service provided to a default service program to a retail electric customer *not receiving service from an EGS.*" *Id.* (emphasis added). That is, an EGS such as Clearview, unlike a default service program like Duquesne Light, is not required to include its own calculation of generation supply as a price-to-compare. Indeed, the price-to-compare is designed for consumers to be able to compare the price the EGS is charging with the default service price. *See Investigation of Pennsylvania's Retail Electricity Market: Intermediate Work Plan*, No. I-2011-2237952, 2011 WL 6838044 (Pa. P.U.C. Dec. 15, 2011) ("Placement of the default service PTC on the monthly electric bill is intended to let the customer know the price that he or she is paying for default service so the customer can then use this information when shopping for competitive generation supply.") It may well be that Clearview, like Duquesne Light and other default service programs, includes the cost factors identified above in the rate that it passes on to consumers. But none of these factors is listed in the Sales Agreement's reference to "Electric Generation Supply."

The alleged Clearview rate never varies over the twelve months at issue—it holds steady at .1299/kwh even when the alleged wholesale rate varies from .0836/kwh down to .0521/kwh. (ECF No. 21, ¶ 38.) At this stage of the case, the Court must consider the permissible inference that the other factors that Clearview identifies in the Sales Agreement—transmission charges and estimated state taxes—would not wholly account for this fluctuation. Clearview argues that its rate does not need to "mirror" the wholesale rate, but that is not what Plaintiff has averred. She has instead alleged damages as a result of Clearview's charging rates that were not *based on* wholesale market conditions. (ECF No. 21, ¶ 62.)

9

Clearview has raised a number of arguments that, although they may ultimately prove meritorious, are not appropriate for resolution at this stage, when the Court must draw all reasonable inferences in Plaintiff's favor. For instance, Clearview argues that "wholesale market conditions are based on many factors besides . . . the wholesale market price." (ECF No. 26, at 16.) However, Plaintiff has plausibly alleged that Clearview did not follow its Sales Agreement term to "base[]" its rate on "wholesale market conditions" by averring facts supporting an inference that despite changes in those conditions, Clearview's rate never changed.

Drawing all reasonable inferences in Plaintiff's favor, as the Court must, the Court concludes that Plaintiff has stated a facially plausible claim for breach of contract.

### B. Unjust Enrichment (Count II)

The parties concede the existence of a contract. (*See* ECF No. 21, ¶ 58; ECF No. 32, at 8.) "Under Pennsylvania law, the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract . . . ." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x, 165, 169–170 (3d Cir. 2014) (quoting *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 520 (2006)). A claim for unjust enrichment may be pleaded in the alternative to other contract claims, but "such alternative pleading is plausible only when the validity of the contract is itself actually disputed, making unjust enrichment a potentially available remedy." *Id.* at 170 n.8 (emphasis added). Because the parties do not dispute the validity of the contract, the Court will grant Defendant's Motion to Dismiss, without prejudice, as it relates to Count II of the Amended Complaint. *See id.* ("Here, [the parties] had a contractual relationship, the existence and validity of which are not challenged. Thus [the plaintiff's] claim for unjust enrichment, even when pled in the alternative, was appropriately dismissed.").

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Clearview's Motion to Dismiss will be granted in part (as to Count II) and denied in part (as to Count I).

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: September 5, 2018